UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>      v.<br><br>PATTSY S. PELATE,<br><br>             Defendant. | Case No. 13-cr-40066-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Pattsy S. Pelate's emergency motion to modify the terms of her supervised release to allow her to reside at her mother's home and/or with her sister[1] instead of in a residential reentry center, where she is currently placed (Doc. 137). The Government has responded to the motion (Doc. 142), and Pelate has replied to that response (Doc. 143).

**I.      Background**

In October 2013, Pelate pled guilty to one count of conspiracy to manufacture methamphetamine, and in February 2014, the Court sentenced her to serve 84 months in prison followed by a 4-year term of supervised release. The Court reduced her imprisonment sentence to 70 months in light of Amendment 782 to the United States Sentencing Guidelines Manual. Pelate served her term of imprisonment and began her supervised release term in October 2018.

In April 2019, the Court revoked her supervised release and sentenced her to serve 12 months in prison followed by 1 year of supervised release. She served that sentence of

---

[1] Several places in the motion Pelate asks to be able to live at her mother's home, but her conclusion asks that she be allowed to live with her sister at a residence approved by the Probation Office. It is unclear whether these references are to the same location.

imprisonment and again began serving a term of supervised release on March 27, 2020. One of the special conditions of her current supervised release is that she be placed in a residential reentry center for up to six months. The rationale for such a condition was "to assist the defendant with correctional treatment, to protect the community, and to provide the defendant with a stable residence so she can save money to establish her own residence away from negative social networks." Jmt. 5 (Doc. 131 at 5). Pelate is currently assigned to live at Cornerstone Residential Reentry Center in Marion, Illinois.

Pelate now asks the Court to modify her conditions of supervised release pursuant to 18 U.S.C. § 3583(e)(2) to allow home detention in Chester, Illinois. She claims she is at greater risk of infection with COVID-19 at Centerstone, where she shares facilities with other residents and cannot take many of the preventive measures recommended by the Centers for Disease Control and Prevention. She also notes that she is unable to find employment due to the current pandemic restrictions and economic circumstances created by those restrictions, so the purposes for placing her Centerstone cannot be achieved.

Opposing Pelate's request for modification, the Government points to her apparent inability to follow supervision rules as demonstrated by the numerous violations that led to her two supervised release revocations. It further points to the measures Centerstone has successfully taken to avoid the spread of COVID-19 within its walls and notes that, as of the time its brief was filed, there was not a single confirmed case of COVID-19 at the facility. In contrast, Randolph County, where Pelate wants to reside, is a hotbed of COVID-19 cases—246 diagnosed cases of which 3 resulted in death, *see* dph.illinois.gov/covid19 (visited May 21, 2020). The Government further notes that Pelate does not appear to suffer from any specific ailment or condition that renders her at greater risk from COVID-19 than the public at large and

has not shown that the medical resources available to her at Centerstone would be inadequate to treat her if she were to develop COVID-19.

## II.     Analysis

The statutory authority to modify the terms of supervised release is found in 18 U.S.C. § 3583(e)(2):

> **(e) Modification of conditions or revocation.**—The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
> \* \* \*
> **(2)** . . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. . . .

Federal Rule of Criminal Procedure 32.1(c), in turn, provides that the Court must hold a hearing before modifying the conditions of supervised release unless the defendant waives a hearing or the relief requested is favorable to the defendant.  Here, the requested relief is favorable to Pelate, so the Court need not hold a hearing.

The Court has considered the relevant factors listed in § 3553(a) and declines to modify Pelate's conditions of supervised release.  The Court is well-aware of the dangers presented by COVID-19.  As Amended Administrative Order 266, issued May 13, 2020, notes:

> The current COVID-19 outbreak has impacted the Southern District of Illinois, all 50 states, and countries around the world.  Although for many this disease appears to cause only flu-like symptoms, for others it can pose a serious risk, even death.  There is currently no vaccine to prevent COVID-19.  As of the date of this Order, the Centers for Disease Control and Prevention ("CDC") reports over one million recorded cases growing at a rate of over twenty-six thousand per day, and over sixty thousand five hundred deaths growing at a rate of over two thousand five hundred per day.  The Governor of Illinois declared a disaster and entered a "stay-at-home" Executive Order now in effect until May 31, 2020.  The rate of contamination in the 38 counties comprising this the district has not yet peaked. . . .
> The CDC and local public health officials have advised that the best way

>to prevent illness is to avoid opportunities for exposure. The virus is thought to spread mainly from person-to-person, particularly between people who are in close contact with one another (within about 6 feet) and through contact with contaminated surfaces.

The Court has considered the relevant factors under 18 U.S.C. § 3553(a) and finds that they do not weigh in favor of modifying Pelate's conditions of supervised release. The nature and circumstances of the offense and Pelate's history and characteristics remain the same as when the Court originally made its decision to impose the residential reentry center condition. Even though she has been unable to find employment, there is no indication living somewhere else would increase those chances. The other non-financial purposes for which the Court imposed the current living requirements are still being served: assisting Pelate with correctional treatment, protecting the community from the risk that Pelate will reoffend or otherwise fail to comply with the other conditions of her supervised release, and providing her with a stable residence away from negative social networks.

Additionally, it appears that, far from being deliberately indifferent to the risk posed by COVID-19, Centerstone is taking appropriate and successful measures to protect Pelate from exposure. It is screening all those who enter the facility for COVID-19 symptoms, residents and staff are sanitizing throughout the day, and the facility has severely restricted visitors and movement. It is not clear that, in light of these measures, Pelate faces a greater risk of danger from COVID-19 in Centerstone than she would in Randolph County. In the absence of a substantiated unreasonable increase in risk or evidence of deliberate indifference by Centerstone, the "deliberate indifference to increased risk of future harm" theory of *Helling v. McKinney*, 509 U.S. 25, 35 (1993), simply does not apply. Furthermore, there is no evidence that should those efforts fail to prevent exposure to the disease, the medical assistance available to Pelate at Centerstone would be inadequate.

Although not all are discussed in detail here, the Court has considered all the arguments in Pelate's motion for modification of her terms of supervised release and has found that consideration of the relevant § 3553(a) factors does not warrant the modification she seeks. If and when the Probation Office finds it is no longer authorized or advisable for Pelate to reside at Centerstone, it will implement that decision as part of her supervision.

### III. Conclusion

For the foregoing reasons, the Court **DENIES without prejudice** Pelate's emergency motion to modify the terms of her supervised release (Doc. 137).

**IT IS SO ORDERED.**
**DATED:  May 21, 2020**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**